**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO. 8:25-mj-02957 |
| | * | |
| CRISTIAN RIVAS-BONILLA, | * | |
| | * | |
| Defendant | | |

✓ FILED ____ ENTERED
____ LOGGED ____ RECEIVED
10:44 am, Nov 14 2025
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____M.G._____ Deputy

<u>**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**</u>

I, Aziz Wiley, being duly sworn, depose and state the following:

**INTRODUCTION**

1.     Based on the information herein, I submit that there is probable cause to believe, that on or about November 4, 2025, in the District of Maryland, **CRISTIAN RIVAS-BONILLA** (**"RIVAS-BONILLA"**) committed the crime of resisting, impeding, or interfering with law enforcement officers, in violation of 18 U.S.C. § 111.

**AGENT BACKGROUND**

2.     I currently serve as an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18 United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

3.     I have worked for Homeland Security Investigations ("HSI") as a Special Agent since December 29, 2024…, assigned to the Homeland Security Task Force - 1 and the Violent Gangs Task Force (VGTF) in Baltimore, Maryland. As part of my employment with HSI, I completed the Criminal Investigator Training Program, which is a three-month course for all federal investigations.  Additionally, I completed the Homeland Security Investigations Special

Agent Training, which is an additional three-month course. In my capacity, my duties include investigating criminal organizations that pose a threat to national security and public safety and the disruption and dismantling of these organizations.

4. During my time with HSI, I have assisted in several criminal investigations of crimes including but not limited to cocaine distribution and money laundering. Additionally, I have made and assisted in arrests where contraband, evidence, fruits, and instrumentalities pertinent to distribution of crimes listed above have been seized. I have also executed and assisted in executing at least ten search warrants where evidence, fruits, and instrumentalities pertinent to those crimes were seized. Finally, I have interviewed and assisted in interviewing at least ten people about the crimes outlined above, including but not limited to eyewitnesses, victims, suspects, and people who have acknowledged committing those crimes.

5. The facts in this Affidavit come from my personal observations and information obtained from witnesses and other agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge regarding this matter.

## PROBABLE CAUSE

6. On November 4, 2025, HSI Baltimore Agents traveled to an address in Camp Springs, Maryland, in search of **RIVAS-BONILLA**, based on investigatory leads. HSI agents were in search of **RIVAS-BONILLA** for an arrest based on suspected 18th Street Gang affiliation and a final order of removal by an immigration judge. At approximately 0750 hours, agents observed a male subject fitting the description of **RIVAS-BONILLA** exiting the front door of the residence and entering the driver's side door of a gray in color Honda SUV bearing Maryland license plate, 4FR2182, which is registered to **RIVAS-BONILLA**. **RIVAS-BONILLA** began to

move forward off the driveway, then abruptly stopped and reversed the vehicle back onto the driveway. Approximately two minutes later, **RIVAS-BONILLA** turned left out of the driveway heading towards Suitland Road. Agents attempted to conduct a vehicle stop to arrest **RIVAS-BONILLA** by activating emergency lights on their unmarked vehicles. Two agents' vehicles were behind **RIVAS-BONILLA,** and one agent's vehicle directly blocked his path of travel. Agents attempted to confirm **RIVAS-BONILLA's** identity to arrest him and transport him to the Baltimore Field Office for processing.

7.      Agents exited their vehicles and gave commands to **RIVAS-BONILLA** to stop his car. At this time, agents were clearly identifiable as law enforcement agents with tactical vests on with police decals. **RIVAS-BONILLA** reversed his vehicle and drove onto the sidewalk in an attempt to evade HSI agents. Agents then activated their emergency sirens and followed **RIVAS-BONILLA** on Suitland Road, in Camp Springs, Maryland. **RIVAS-BONILLA** then made a right turn on Suitland Parkway and continued to disregard agent's emergency lights and sirens. Speeds were approximately 70 miles per hour at this time (both the Defendant's vehicle and the vehicles of pursuing agents). Agents attempted to bring **RIVAS-BONILLA's** vehicle to a stop by having one agent drive their vehicle directly in front of him, one agent drive their vehicle to the side of him, and another agent drive their vehicle directly behind him. **RIVAS-BONILLA** quickly swerved his vehicle to the right to avoid agents slowing him down. **RIVAS-BONILLA** continued driving for approximately 4-5 miles and then turned right at the light onto Pennsylvania Ave (Route 4 South) from Suitland Parkway. **RIVAS-BONILLA** drove for approximately a mile, turned right onto Marlboro Pike, and then made a right turn onto Dower House Road.

8.      Agents attempted to slow down **RIVAS-BONILLA's** vehicle again by attempting to have agents' vehicles in front of him, on the side of him, and behind him. **RIVAS-BONILLA**

continued driving without any regard for slowing down. Agents continued their efforts to bring the Defendant's vehicle to a stop including by maneuvering their vehicles so as to require the Defendant to stop.[1] Eventually, the Defendant's vehicle and two of the agent vehicles came into contact. HSI Agents had damage to the front right fender and one government vehicle also had damage to the front right passenger door.

9. **RIVAS-BONILLA's** vehicle came to a stop after the contact between the vehicles. Agents then exited their vehicles with their duty weapons pointed at **RIVAS-BONILLA** giving him commands to turn his vehicle off and show his hands. Agents then commanded him to exit his vehicle. **RIVAS-BONILLA** did not exit the vehicle as instructed and agents had to extract **RIVAS-BONILLA** from the vehicle and onto the ground, where he was placed under arrest and placed in in handcuffs and leg shackles. At this time, agents arrested **RIVAS-BONILLA** based on his final order of removal to El Salvador.

10. Agents were able to visually identify **RIVAS-BONILLA,** and he confirmed his identity once in custody. Two HSI agents suffered minor injuries, and one agent's vehicle was inoperable due to a steering issue from the collision. Agents contacted roadside assistance and the agent's inoperable vehicle was towed to the Ford dealership for an estimate on repairs.

---

[1] Body-worn camera for two of the HSI agents, including your affiant and another agent, shows the events from their vantage during the pursuit. The BWC video images do now show the activities of the Defendant's vehicle because of the position of the camera on the chests of the agents who were sitting in their driver's seats. The BWC video does portray some of the communication among the agents and the agents' activities within their vehicle during the pursuit and at the time of the collision. At the moment of the collision, one of the agents was attempting to position his vehicle so as to prevent the Defendant's vehicle from continuing; the BWC for that agent shows him turn his steering wheel to the right in an attempt to position his vehicle. At that moment, there is an audible sound from when the vehicles contacted each other. The BWC videos do not show the collision but the sound of the collision can be heard.

11.    In route to the Baltimore Field Office, agents asked **RIVAS-BONILLA** why he did not stop, and he stated, "I just panicked when I saw you guys." **RIVAS-BONILLA** also admitted that he noticed law enforcement parked on the street near his residence and that is why he placed his vehicle in reverse and parked on the driveway.

12.    For the foregoing reasons, the Defendant did commit an offense in violation of 18 U.S.C. § 111. The Homeland Security Investigations agents involved in the apprehension of the Defendant were "officer[s] or employee[s]" of Homeland Security Investigations, which is an agency of the United States government and were, at the time of the events herein, "engaged in…the performance of official duties," that is the enforcement of United States immigration law. The Defendant's conduct was also on "account" of the HSI agents' performance of their official duties. The Defendant resisted, impeded, and interfered with law enforcement officers law enforcement officers by his decision to flee from the law enforcement officers and to engage them in a high speed chase through public roads in the District of Maryland, notwithstanding the agents' attempts to effect an arrest, and therefore constituted an offense in violation of 18 U.S.C. § 111.

## CONCLUSION

13.    For the foregoing reasons, there is probable cause for the issuance of a criminal complaint and arrest warrant for **RIVAS-BONILLA** for resisting, impeding, or interfering with law enforcement officers law enforcement officers, in violation of 18 U.S.C. § 111.

*A. Wiley*
_____
Aziz Wiley
Special Agent
Homeland Security Investigations

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) this ___11th___ day of November 2025.

_____
Honorable Ajmel A. Quereshi
United States Magistrate Judge